UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEANNE DAWN LEWIS,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>　　　　Defendant. | Case No. 1:17-cv-00674-BAM<br><br>**ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT** |

**I.      INTRODUCTION**

Plaintiff Jeanne Dawn Lewis ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for disability insurance benefits ("DIB") pursuant to Title II of the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to Magistrate Judge Barbara A. McAuliffe. Having carefully considered the parties' briefs as well as the entire record in this case, the Court finds the decision of the Administrative Law Judge ("ALJ") to be supported by substantial evidence in the record as a whole and based upon proper legal standards. Accordingly, this Court affirms the agency's determination to deny benefits.

**II.     BACKGROUND**

Plaintiff applied for benefits on April 18, 2013, alleging disability from issues related to

carpal tunnel syndrome, depression, and gastroesophageal reflux disease ("GERD"). AR 100, 111. Her application was denied initially and on reconsideration. AR 106-110. At the hearing held on January 12, 2016, Plaintiff amended her alleged onset date to May 20, 2012. AR 47. The hearing was held before Administrative Law Judge ("ALJ") Danny Pittman. Plaintiff appeared and testified along with her non-attorney representative, Deidre McCaskell. AR 32-98. The ALJ also heard testimony from an independent vocational expert ("VE"). AR 92.

Using the Social Security Administration's five-step sequential evaluation process, the ALJ found that Plaintiff last met the insured status requirements on December 31, 2012. AR 17. Plaintiff had not engaged in substantial gainful activity during the period from her alleged onset date of December 6, 2007 through her date last insured of December 31, 2012. AR 17. The ALJ identified: bilateral carpal tunnel syndrome status post surgeries with tendinitis and history of de Quervains tendonitis as severe impairments. AR 17. Nonetheless, the ALJ determined that the severity of Plaintiff's impairments did not meet or medically equal the severity of any of the listed impairments. AR 18.

Based on his review of the entire record, the ALJ found that, through the date last insured, Plaintiff had the following residual functional capacity (RFC):

> to perform less than the full range of light work except that the claimant could lift and carry 20 pounds occasionally and 10 pounds frequently, stand and/or walk for six hours, and sit for six to eight hours in an 8-hour day with normal breaks. The claimant was capable of frequent handling, fingering, and feeling.

AR 19.

Applying this RFC, the ALJ found that Plaintiff could return to her past relevant work as a secretary. AR 23. However, based on her age (58 years old), education, and RFC, there were also other jobs existing in significant numbers in the national economy that she could perform. AR 24.

### III. LEGAL STANDARD

Under 42 U.S.C. § 405(g), the Court reviews the Commissioner's decision to determine if: (1) the Commissioner's findings are supported by substantial evidence; and (2) the Commissioner used correct legal standards. *See Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1159 (9th Cir. 2008); *Hoopai v. Astrue*, 499 F.3d 1071, 1074 (9th Cir. 2007). Substantial evidence is "such

2

relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal citation and quotations omitted); *see also Hoopai*, 499 F.3d at 1074.

## IV. DISCUSSION

Plaintiff raises three arguments challenging the ALJ's decision. Plaintiff contends the ALJ erred in: (1) rejecting the findings of her treating physician Dr. Hongshik Han; (2) evaluating her subjective symptom testimony; and (3) finding that she was "closely approaching advanced age" at Step Five. (Docs. 12, 16).

### 1. The ALJ Properly Discounted the Opinion of Plaintiff's Treating Physician

In her first issue, Plaintiff argues that the ALJ's refusal to credit Dr. Han's treating opinion is unsupported by the record. Instead, Plaintiff contends that Dr. Han is entitled to more deference as a treating physician under "the treating physician rule," 20 C.F.R. § 404.1527(c)(2).

An opinion of a treating physician is given more weight than the opinion of non-treating physicians. *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). To reject an uncontradicted opinion of a medically acceptable treating source, an ALJ must state clear and convincing reasons that are supported by substantial evidence. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). When a treating physician's opinion is contradicted by another doctor, "the ALJ may not reject this opinion without providing specific and legitimate reasons supported by substantial evidence in the record. This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Orn*, 495 F.3d at 632 (citations and quotation marks omitted). "When there is conflicting medical evidence, the Secretary must determine credibility and resolve the conflict." *Thomas v. Barnhart*, 278 F.3d 947, 956-57 (9th Cir. 2002) (citation and quotation marks omitted).

#### i. The Opinion of Dr. Han

In January 2013, shortly after her date last insured, Plaintiff began receiving treatment for her hand and wrist issues with Dr. Han. AR 349, 757. On January 29, 2013, Dr. Han noted previous carpal tunnel release surgeries in 1997 and 1998, and a right first dorsal release in 2000. AR 349. On examination, Plaintiff had some swelling over the left first dorsal compartment with

focal tenderness. Dr. Han administered a Finkelstein's test which significantly worsened her pain and she had slight tenderness over the base of the thumb. AR 349. Dr. Han diagnosed left "de Quervain's tendinitis." AR 349. When Dr. Han provided treatment options, Plaintiff opted for "the conservative [treatment] option." AR 349. However, as Dr. Han was administering the injection, Plaintiff pulled away from the needle and stated that she was unable to undergo the injection. Dr. Han discussed further treatment options with her and referred her to physical therapy for "gentle gliding exercises." AR 350. He also recommended that she use a protective brace and take over-the-counter anti-inflammatory medications as needed. AR 350.

Plaintiff returned to Dr. Han on August 13, 2013, reporting near complete resolution of right carpal tunnel symptoms after a subsequent steroid injection. AR 383. However, she reported worsening carpal tunnel symptoms on the left over the median nerve with burning pain radiating into the forearm. AR 383. On examination, she had slight swelling of the left first dorsal compartment with focal tenderness and a Finkelstein's test elicited further pain. AR 383. Dr. Han noted that Plaintiff had "no pain over the left thumb basal joint." "No pain over the scaphoid and lunate joint with negative Watson maneuver." AR 383. "Negative LT shuck test. Negative piano key test" and "normal pronation and supination." AR 383. Dr. Han administered a cortisone steroid injection and instructed Plaintiff to continue her use of over-the-counter anti-inflammatory medications." AR 383. Dr. Han instructed Plaintiff to return in "two weeks" if her symptoms did not resolve.

Plaintiff did not return to Dr. Han until three months later on November 14, 2013. AR 384. At her appointment, Plaintiff complained of worsening carpal tunnel symptoms in her right hand. AR 384. She reported numbness and tingling in the right median nerve with severe burning pain. AR 384. She believed that her right hand was becoming significantly weaker with further loss of dexterity. T 384. Dr. Han noted atrophies in both hands at the fleshy base of her thumbs. AR 384.

On December 11, 2013, Dr. Han performed a repeat right carpal tunnel release surgery and first dorsal compartment release. AR 392. In the surgery notes, he reported there was a significant amount of scar tissue and tensynovial proliferation. AR 393.

Following the surgery, Plaintiff reported that numbness and tingling on the right hand had

"already" somewhat decreased, however she complained of scar pain, sensitivity, and stiffness. AR 436. Plaintiff was referred to therapy for scar massaging, desensitization, gliding exercises and strengthening protocol. AR 436.

On February 27, 2014, Plaintiff returned to Dr. Han, reporting complete resolution of numbness and tingling in the right hand. AR 658. However, she still complained of scar pain, especially "when pushing herself off the chair from [a] hard flat surface." AR 658. Plaintiff was referred for more scar massaging and given a prescription for the Liddoderm patch. AR 658. She returned on April 10, 2014, reporting a further decrease in right carpal tunnel symptoms and scar pain. AR 656. She reported that she felt that her "right hand grip strength and dexterity [had] improved significantly." AR 656. She was still experiencing left de Quervain's tendonitis and carpal tunnel syndrome, but these were "under control with the use of the protective brace and anti-inflammatory medications." AR 656. She stated that she was not interested in further intervention to treat her symptoms. AR 656.

On August 13, 2015, Dr. Han provided a medical source statement. He diagnosed Plaintiff with carpal tunnel syndrome, trigger thumb, and tendonitis, treated with surgery, therapy, and injections. AR 757. He noted that Plaintiff had little improvement. AR 757. He opined that Plaintiff could rarely lift less than ten pounds, occasionally operate hand controls, never grip or grasp, could not pick up coins, handle small parts, or use a screwdriver, and she needed fifteen-minute breaks every hour. AR 758-59.

The ALJ rejected Dr. Han's opinion as inconsistent with his own minimal clinical findings and the sparse medical record from the relevant period. An ALJ may properly discount a treating physician's opinion that is inconsistent with the objective medical evidence or the claimant's reports to physicians. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008); *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001). These were specific and legitimate reasons supported by substantial evidence from the record to justify discrediting Dr. Han.

At the outset, the ALJ found Plaintiff's date last insured ("DLI") to be December 31, 2012. AR 17. Plaintiff initially alleged disability beginning on December 6, 2007. AR 15, 100, 222. During the administrative hearing, however, Plaintiff's representative recommended amending

Plaintiff's onset to May 2012, recognizing there was no medical support for the earlier onset date. AR 47. Therefore, the relevant period for determining Plaintiff's disability is limited to the seven months between May 2012 and December 2012. AR 15-17.

In considering Dr. Han's report, the ALJ properly considered the relevant time period and observed that Dr. Han's opinion "is not consistent with the minimal clinical findings." AR 21. The ALJ noted that in May 2012, during the relevant time period, "nerve conduction studies showed mild carpal tunnel syndrome with no evidence of generalized neuropathy." A subsequent nerve conduction and EMG study shortly after the date last insured showed only a mild progression of carpal tunnel syndrome. AR 22.

The ALJ also noted evidence obtained after the relevant time period demonstrated only minimal signs of carpal tunnel syndrome, completely resolved de Quervain's tendinitis, and a lack of any symptoms in January of 2015. AR 22-23, 652. These minimal clinical findings are inconsistent with Dr. Han's findings of severely limiting symptoms as a result of Plaintiff's carpal tunnel syndrome and tendonitis.

The Court also notes that the ALJ seemingly questioned the retrospective status of Dr. Han's opinion.[1] The ALJ found that "there is not much evidence prior to [Plaintiff's] date last insured." AR 22. The ALJ then proceeded to question the medical evidence obtained after her date last insured as generated for the purpose of advancing her disability application and appeal. AR 22. Traditionally, an ALJ's opinion that a Plaintiff is generating evidence to support her disability application is not a legally sufficient reason in itself for discounting a treating opinion. *See Reddick v. Chater*, 157 F.3d 715, 726 (9th Cir. 1998) ("[I]n the absence of other evidence to undermine the credibility of a medical report, the purpose for which the report was obtained does not provide a legitimate basis for rejecting it."). However, an ALJ may reject a later opinion that fails to specifically assesses a Plaintiff's functional capacity prior to any applicable insurance expiration date. *Johnson v. Shalala*, 60 F.3d 1428, 1432-33 (9th Cir. 1995) (Court permissibly rejected a retrospective disability opinion because it was "not substantiated by medical evidence

---

[1] Generally, medical reports should not be disregarded solely because they are rendered retrospectively, and may be relevant to a prior period of disability. *Smith v. Bowen*, 849 F.2d 1222, 1225 (9th Cir. 1988).

6

relevant to the period in question"). Dr. Han's opinion, rendered after the date last insured, failed to provide an assessment with respect to Plaintiff's functional capacity prior to the date last insured. It was proper for the ALJ to find that Dr. Han's opinion failed to coincide with minimal evidence from the relevant time period.

Instead of relying on Dr. Han's unsupported opinion, the ALJ relied on the medical opinions from the two State agency non-examining physicians who reviewed the relevant medical records generated by Dr. Han and other medical evidence in the record. The non-examining physicians found that Plaintiff could lift and carry 50 pounds occasionally and 25 pounds frequently. AR 118. They further opined that Plaintiff could frequently handle with both hands and do basic light hand work. AR 21, 118. This evidence further undermined Dr. Han's opinion that Plaintiff could rarely lift less than ten pounds and never grip or grasp. AR 757-759. *See Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) (finding that contrary opinion of a non-examining medical expert may constitute substantial evidence when it is consistent with other independent evidence in the record).

Upon reviewing the record, the ALJ appropriately found that the objective medical evidence does not support Plaintiff's allegations, and, to the contrary, the record supported fewer limitations. AR 23. The ALJ was entitled to reject Dr. Han's opinion as unsupported by the abundant evidence demonstrating that Plaintiff's impairments were mild. Thus, the Court finds that the ALJ's explanation for rejecting Dr. Han's conclusions were specific, legitimate, and supported by substantial evidence. *See, e.g., Dias v. Colvin*, No. 14-CV-5271-NJV, 2016 WL 758345, at *3 (N.D. Cal. Feb. 26, 2016) (holding that the record did not have the "objective findings that would justify the more extreme limitations the doctor assessed").

### 2. Credibility

Plaintiff next contends that the ALJ failed to provide legally adequate reasons to reject her credibility. (Doc. 12 at 20-24). The Court disagrees.

"To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007). At step one, "the ALJ must determine whether the claimant has presented

objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Id.* (*quoting Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms. AR 22.

At step two, if an ALJ concludes that the claimant is not malingering and has satisfied the first step, "the ALJ may 'reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015) (citation omitted); *Burrell v. Colvin*, 775 F.3d 1133, 1136-37 (9th Cir. 2014). "A finding that a claimant's testimony is not credible 'must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain.'" *Brown-Hunter*, 806 F.3d at 493 (citation omitted). "'General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints.'" *Id.* (citation omitted).

Here, the ALJ provided several specific, clear and convincing reasons for discounting Plaintiff's testimony. The ALJ first determined that Plaintiff's statements were inconsistent with the objective medical evidence. The ALJ then relied on Plaintiff's conservative treatment, inconsistent treatment history, improvement with medication, and Plaintiff's reasons for unemployment in discounting Plaintiff's subjective symptom testimony. AR 22.

First, "although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis." *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005). The ALJ's finding regarding the objective medical evidence during the relevant period is supported by substantial evidence for the reasons described in the preceding section.

Second, the ALJ correctly noted that the record is replete with evidence of Plaintiff's improved functioning with conservative treatment measures. An ALJ may properly rely on the fact that medication is helpful to discount a claimant's credibility. *Tidwell v. Apfel*, 161 F.3d 599, 602 (9th Cir. 1998) (ALJ may properly rely upon weak objective support, lack of treatment, daily

8

activities inconsistent with total disability, and helpful medication). In finding that the limiting effects of her symptoms are not entirely credible, the ALJ noted that during and after the relevant period, Plaintiff's impairments exhibited improved functioning with treatment. AR 23. In August 2013, Plaintiff's treating physician noted that she experienced a near complete resolution of the carpal tunnel symptoms in her right hand. AR 383. In 2015, her treating physician reported that her left trigger thumb symptoms completely resolved after a steroid injection and her "right de Quervain's tendinitis is completely resolved." AR 658. Her physician also noted that "currently, she is minimally symptomatic." AR 652. Overall, the ALJ cited several examples throughout the record establishing that treatment effectively improved Plaintiff's symptoms. The ALJ's finding that Plaintiff's improvement with medication and treatment undercut Plaintiff's allegations of total disability was a legally sufficient basis to reject the extent of Plaintiff's symptom testimony. *See Neal v. Colvin*, No. 1:14-cv-01053-SKO, 2015 U.S. Dist. LEXIS 119385, 2015 WL 5232328, at \*\*37-42 (E.D. Cal. Sep. 7, 2015) (the ALJ may consider effective treatment in weighing a claimant's credibility).

The ALJ also supported his credibility finding with additional clear and convincing reasons by referring to Plaintiff's inadequately explained failure to seek consistent treatment. Upon reviewing the record, the ALJ found that "there was a huge gap in treatment." AR 22. Indeed, Plaintiff amended her disability onset date to accommodate the nearly 3.5 years that she failed to seek treatment for her symptoms. Plaintiff responds that her gap in treatment history is explained by her lack of medical insurance at the time. (Doc. 12 at 22). However, that fails to account for instances in 2013 and 2015, also noted by the ALJ, where her physician offered cortisone shots for her alleged symptoms and she declined. AR 22. Further, the ALJ found that while Plaintiff made some progress in therapy, her symptoms were not fully resolved "due to her broken therapy routine." AR 22. In light of this evidence, the ALJ appropriately found that the failure to seek treatment undermined Plaintiff's allegations that her conditions disabled her. *Burch*, 400 F.3d at 68 ("The ALJ is permitted to consider lack of treatment in his credibility determination"). This was a clear and convincing reason, supported by substantial evidence, to discount Plaintiff's credibility.

9

Given the above, the ALJ provided clear and convincing reasons supported by substantial evidence when concluding Plaintiff's subjective symptom testimony was not credible. The ALJ clearly identified what testimony he found lacked credibility and the corresponding evidence that undermined Plaintiff's complaints. *Lester v. Chater,* 81 F.3d 821, 834 (9th Cir. 1995). If the ALJ's finding is supported by substantial evidence, the court "may not engage in second-guessing." *Thomas,* 278 F.3d at 959. Further, even if some of the reasons provided could be found inadequate, there are sufficient reasons provided to support the credibility determination. *See Batson v. Comm'r of Soc. Sec. Admin.,* 359 F.3d 1190, 1195-97 (9th Cir. 2004). Accordingly, the ALJ's credibility findings are free of reversible error.

### 3. Step Five Findings

In her final issue, Plaintiff argues that the ALJ's Step Five finding is flawed because the ALJ incorrectly found that she is an "individual *closely approaching advanced age*." AR 24. Because Plaintiff is 58 years old, as acknowledged by the ALJ," Plaintiff argues that the ALJ erred because "an individual is considered *advanced age* at attainment of age 55." 20 C.F.R. Part 404, Subpart P, Appendix 2, Section 201.00(d) (emphasis added).

As conceded by the Commissioner, the ALJ erred in failing to find that, at 58 years old, Plaintiff is considered "advanced age." Nevertheless, the Court finds that any such error was harmless. *Curry v. Sullivan*, 925 F.2d 1127, 1129 (9th Cir. 1990). The ALJ concluded at step four that Plaintiff could return to her past relevant work, thereby eliminating the need to determine whether based on her age, education, and work experience, Plaintiff could perform other work in the national economy at step five. *See Molina v. Colvin*, 2013 U.S. Dist. LEXIS 135882, *12, 2013 WL 5220570 (C.D. Cal. Sept. 16, 2013) ("Even assuming the ALJ erred in finding that Plaintiff's work as a tagger constituted past relevant work, any error was harmless, as the ALJ made the alternative finding at step four that Plaintiff could return to her past relevant work as a sales clerk."). Therefore, the ALJ's ultimate decision regarding Plaintiff's disability would have remained the same whether or not plaintiff was placed in the "advanced age" category. *See Marsh v. Colvin*, 792 F.3d 1170, 1173 (9th Cir. 2015) (error is harmless if it is "'inconsequential to the ultimate nondisability determination'") (citation omitted). The ALJ's technical error was inconsequential to

the ultimate non-disability determination, and as a result Plaintiff is not entitled to reversal on this issue. *See Burch*, 400 F.3d at 679 ("A decision of the ALJ will not be reversed for errors that are harmless").

## V. CONCLUSION

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards. Accordingly, this Court **DENIES** Plaintiff's appeal from the administrative decision of the Commissioner of Social Security. The Clerk of this Court is **DIRECTED** to enter judgment in favor of the Commissioner of Social Security, and against Plaintiff Jeanne Dawn Lewis.

IT IS SO ORDERED.

Dated: **September 12, 2018**  /s/ *Barbara A. McAuliffe*
UNITED STATES MAGISTRATE JUDGE